IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CITY OF PHENIX CITY, ET AL, | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| vs. | } | CIVIL ACTION NO. 3:06-CV-1074 |
| | } | |
| MCKENZIE TANK LINES, INC., | } | |
| | } | |
| Defendant. | } | |

**DEFENDANT McKENZIE TANK LINES, INC.'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT
PURSUANT TO RULE 12(b)(6)**

Plaintiffs initiated this action through the filing of a Complaint in the Circuit Court of
Russell County, Alabama (Civil Action File No. CV 06-357). On December 1, 2006, Defendant
McKenzie Tank Lines, Inc. removed this action to this Court based on federal question
jurisdiction. In their Complaint, Plaintiffs allege that McKenzie "caused a tanker truck spill on
US Highway 280/431 North, in Phenix City, Alabama". (Complaint, ¶ I). On that basis,
Plaintiffs purport to allege claims "pursuant to" two federal statutes, the Comprehensive
Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 et seq.
("CERCLA") and the Motor Carrier Act of 1980, 49 U.S.C. §§ 10101 et seq. ("Motor Carrier
Act"), alleging that that they are "entitled to recover its [sic] costs, including attorney fees for the
clean-up of the chemical spill against the at fault party". (Complaint, ¶ III).

As shown below, because Plaintiffs' Complaint fails to articulate a legally sufficient
claim for recovery under either CERCLA or the Motor Carrier Act, Plaintiffs' claims fail as a
matter of law and Plaintiffs' Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

A.   <u>**Plaintiffs' Complaint Is Insufficient As A Matter of Law to State A Claim for Recovery under CERCLA.**</u>

Plaintiffs' Complaint purports to allege a cause of action for recovery of "its [sic] costs, including attorney fees for clean-up of the chemical spill against the at fault party" "pursuant to the aforementioned federal code section" which ostensibly refers to CERCLA, 42 U.S.C. § 9601 et seq. (Complaint ¶ III). Although Plaintiffs fail to specify the provision of CERCLA under which they seek relief, a plaintiff seeking to recover under CERLCA must plead specific elements in order to state a prima facie case under the statute. As the Eleventh Circuit instructs:

A plaintiff must demonstrate:

1.  the site in question is a "facility" as defined in § 101(9) of CERCLA, 42 U.S.C. § 9601(9);
2.  a release or threatened release of a hazardous substance has occurred;
3.  the release or threatened release has caused the plaintiff to incur response costs consistent with the "national contingency plan" (NCP); and
4.  the defendant is a "covered person" under § 107(a) of CERCLA.

<u>Redwing Carriers, Inc. v. Saraland Apts.</u>, 94 F.3d 1489, 1496 (11th Cir. 1996) (quotations in original) (footnote omitted); <u>see also</u> <u>U.S. v. Mountain Metal Co.</u>, 137 F. Supp. 2d 1267, 1273 (N.D. Ala. 2001) (same); <u>Ascon Properties, Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1152 (9th Cir. 1989) (explaining, "[t]o *state a claim* under 42 U.S.C. § 9607(a), a plaintiff must *allege* that (1) the waste disposal site is a 'facility' within the meaning of 42 U.S.C. § 9601(9); (2) a 'release' or 'threatened release' of any 'hazardous substance' from the facility has occurred, *id.* § 9607(a)(4); *and* (3) such 'release' or 'threatened release' has caused the plaintiff to incur response costs that are 'consistent with the national contingency plan…') (quotations in original) (emphasis added).

Plaintiffs' Complaint fails to even *attempt* to set forth the requisite elements of a prima facie claim under section 107(a) of CERCLA, and therefore Plaintiffs' Complaint should be

dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  In their Complaint, Plaintiffs do not allege that any area or item described in the Complaint is a "facility" as defined in § 101(9) of CERCLA, 42 U.S.C. § 9601(9), nor do they assert that the alleged "truck spill" or "chemical spill" resulted in either the disposal, "release" or a "threatened release" of a "hazardous substance".  See 42 U.S.C. § 9607(a). On this basis alone, Plaintiffs fail to state a claim upon which relief can be granted under CERCLA, and Plaintiffs' Complaint should be dismissed.  See Warwick Admin. Group v. Avon Products, Inc., 820 F. Supp. 116, 121-22 (S.D.N.Y. 1993) (granting motion to dismiss  complaint purporting to assert claim for recovery under 42 U.S.C. § 9607(a), where complaint did not allege that subject material contained "hazardous substances" as defined under CERCLA, holding "[a]bsent some *allegation* that the defendants's [sic] specific solid waste contained hazardous substances, *plaintiffs have failed to allege that the defendants are liable parties* under [CERCLA] § 107(a)(3)." Thus, the Warwick Court held, "we cannot say that plaintiffs have stated a claim upon which relief can be granted.") (emphasis added); see also South Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 407-08 (11th Cir. 1996)(affirming District Court's dismissal of complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), holding allegations plead in complaint were insufficient to sustain claims of "arranger" liability under CERCLA, 42 U.S.C. § 9607(a)(3)).

Furthermore, Plaintiffs' Complaint fails to allege that Plaintiffs incurred cognizable "response costs" that are consistent with the "national contingency plan". See 42 U.S.C. §§ 9607(a)(4), (a)(4)(B); Redwing Carriers, Inc. v. Saraland Apts., 94 F.3d at 1496; Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d at 1153.  Plaintiffs failure to make such allegations provide an additional, independent basis to dismiss the Complaint for failure to state a cognizable claim under CERCLA. E.g., Warwick Admin. Group v. Avon Products, Inc., 820 F.

Supp. at 121-22.    Finally, Plaintiffs do not even allege facts supporting the *inference*, that McKenzie is a "covered person" under CERCLA, 42 U.S.C. § 9607(a).  Although Plaintiffs' Complaint makes a conclusory allegation that McKenzie "caused a tanker truck spill", the Complaint *does not* assert that McKenzie is a "covered person" under § 107(a) of CERCLA, for example, by claiming that McKenzie is either an "owner" or "operator" of the alleged instrumentality giving rise to Plaintiffs' claims. (<u>Compare</u> 42 U.S.C. § 9607(a) <u>with</u> Complaint, §§ I, III).

Plaintiffs' Complaint, purportedly asserting a claim for relief under CERCLA, features no more than superficial and legally insufficient allegations that McKenzie is "at fault" and is "responsible" for a "chemical spill", and that Plaintiffs incurred certain costs for the "clean-up" of same.  (Complaint, §§ I - IV).  Such claims utterly fail to allege the requisite prima facie elements of a cognizable claim for recovery under CERCLA. <u>See</u> <u>Redwing Carriers, Inc. v. Saraland Apts.</u>, 94 F.3d at 1496; <u>U.S. v. Mountain Metal Co.</u>, 137 F.Supp.2d at 1273; <u>South Fla. Water Mgmt. Dist. v. Montalvo</u>, 84 F.3d at 407-08; <u>Ascon Properties, Inc. v. Mobil Oil Co.</u>, 866 F.2d at 1152; <u>Warwick Admin. Group v. Avon Products, Inc.</u>, 820 F. Supp. at 121-22. Accordingly, Plaintiffs' purported claim for recovery under CERCLA fails as a matter of law and Plaintiffs' Complaint should therefore be dismissed.

**B.    <u>Plaintiffs' Complaint Is Insufficient As A Matter of Law to State A Claim for Recovery under the Motor Carrier Act.</u>**

Plaintiffs also purportedly assert a claim for recovery of their "costs, including attorneys fees for the clean-up of the chemical spill" against McKenzie under the Motor Carrier Act, arising from the same factual allegations asserted in support of their purported claims for recovery under CERCLA.  (<u>See</u> Complaint, §§ I, II, III).  Although Plaintiffs fail to specify under which of the Motor Carrier Act's numerous provisions they are ostensibly claiming relief

in the instant suit, this Court has recognized, with respect to a "private cause of action under the statute, [that] 49 U.S.C. § 14704(a)(2) is the only provision on which the courts have relied." Morris v. Florida Transformer, Inc., 2006 WL 2883271 at *6, n.* (M.D. Ala. Oct. 5, 2006) (a copy of which is attached hereto for the Court's convenience as Attachment "A").

However, the allegations contained in Plaintiffs' Complaint fail to state a claim for relief upon which relief can be granted against McKenzie because the Motor Carrier Act, § 14704(a)(2) *only* provides a cause of action for recovery of *commercial* damages, and therefore does not provide a cause of action for recovery of the damages asserted by Plaintiffs herein, which consist of alleged "costs, including attorneys fees" allegedly incurred by Plaintiffs "for the clean-up the chemical spill".   (Complaint, ¶ III); see Stewart v. Mitchell Transport, 241 F.Supp.2d 1216, 1220 (D.Kan. 2002) (holding § 14704(a)(2) *only* creates a cause of action for *commercial disputes*, explaining "Section 14704(a)(2) creates a private right of action for damages in commercial disputes involving violations of the Motor Carrier Act and its regulations, but not for personal injury actions such as the one in the instant case"); Schramm v. Foster, 341 F.Supp.2d 536, 547-48 (D.Md. 2004) (same); Crosby v. Landstar, 2005 WL 1459484 at *2 (D.Del. June 21, 2005) (a copy of which is attached hereto for the Court's convenience as Attachment "B") (dismissing under Fed. R. Civ. P. 12(b)(6) complaint asserting claim for relief under Motor Carrier Act, holding § 14704 did not provide court with jurisdiction over personal injury and property damage claims asserted by Plaintiff under the Motor Carrier Act).

As is clear from the face of the Complaint, Plaintiffs do not seek recovery of *commercial* damages in the instant suit.  (E.g., Complaint, ¶ III).  Indeed, Plaintiffs' Complaint does not allege, nor could it, that there was any "commercial" relationship whatsoever among Plaintiffs and McKenzie giving rise to Plaintiffs' claims in the Complaint.  Rather, Plaintiffs seek recovery

of "costs, including attorney fees for the clean-up of the chemical spill" from McKenzie, which Plaintiffs allege to be the "at fault party" herein.  (Complaint, ¶¶ III, IV).  Thus, even accepting Plaintiffs' allegations as true for purposes of the instant Motion to Dismiss, Plaintiffs' claims for relief under the Motor Carrier Act fail as a matter of law, because the relief sought by Plaintiffs herein, as non-commercial damages, are not a recoverable item of damages under the Motor Carrier Act, § 14704(a)(2).  See Stewart v. Mitchell Transport, 241 F.Supp.2d at 1220; Schramm v. Foster, 341 F.Supp.2d at 547-48; Crosby v. Landstar, 2005 WL 1459484 at *2.  Accordingly, as Plaintiffs cannot recover their alleged damages from McKenzie under the Motor Carrier Act as a matter of law, Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Based on the reasons set out in this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint, McKenzie respectfully moves this Court to dismiss with prejudice Plaintiffs' Complaint on all counts for failure to state a claim upon which relief can be granted.

Done this 8th day of  December, 2006.

**BALL, BALL, MATTHEWS & NOVAK, P.A.**

/s/ Richard E. Broughton
RICHARD E. BROUGHTON (BRO043)

2000 Interstate Park Drive
Suite 204
Montgomery, AL  36109
Telephone:  (334) 387-7680
Facsimile:  (334) 387-3222

OF COUNSEL

**SMITH, GAMBRELL & RUSSELL, LLP**
Stephen E. O'Day
Georgia Bar No. 549337
Andrew M. Thompson
Georgia Bar No. 707319
Christopher J. Bowers
Georgia Bar No. 071507

Suite 3100, Promenade II
1230 Peachtree St., N.E.
Atlanta, GA  30309-3592
Telephone: (404) 815-3500
Facsimile: (404) 815-3509

Counsel for Defendant
McKenzie Tank Lines, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing **Defendant McKenzie Tank Lines, Inc.'s Brief in Support of its Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12(b)(6)** with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

James P. Graham, Jr., Esq.                Kenneth L. Funderburk, Esq.
P.O. Box 3380                             P.O. Box 1268
Phenix City, Alabama 36868               Phenix City, Alabama 36868
Attorney for the City of Phenix City     Attorney for Russell County, Alabama


/s/ Richard E. Broughton
COUNSEL FOR DEFENDANT

Attachment A

Westlaw.

--- F.Supp.2d ----                                                                 Page 1

--- F.Supp.2d ----, 2006 WL 2883271 (M.D.Ala.), 71 Fed. R. Evid. Serv. 498
**(Cite as: --- F.Supp.2d ----)**

**H**
Briefs and Other Related Documents
Morris v. Florida Transformer, Inc.M.D.Ala.,2006.
United States District Court,M.D. Alabama,Eastern
Division.
Lori Ann MORRIS, as administratrix of the estate
of Vernell Brian Morris, Plaintiff,
v.
FLORIDA TRANSFORMER, INC., and Edward
Neal Thompson, Defendants.
**Civil Action No. 3:05cv962-MHT.**

Oct. 5, 2006.

**Background:** Estate of truck driver who was killed
in highway accident brought wrongful death action
under Alabama state law against second truck driver
who hit truck after it rolled over. Defendant moved
for summary judgment.

**Holdings:** The District Court, Myron H. Thompson
, J., held that:

(1) expert testimony of an accident reconstructionist
was not admissible, and

(2) second driver was not liable in wrongful death
and negligence under Alabama law.

Motion granted.

**[1] Evidence 157 ☞544**

157 Evidence
    157XII Opinion Evidence
        157XII(C) Competency of Experts
            157k544 k. Cause and Effect. Most Cited
Cases

**Evidence 157 ☞555.10**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k555 Basis of Opinion
                157k555.10  k.  Medical  Testimony.
Most Cited Cases
In wrongful death action under Alabama law
brought by estate of truck driver who was killed in
highway accident against second driver whose
tractor-trailer hit truck after it rolled over, expert
testimony  of  witness  who  was  accident
reconstructionist that it was highly unlikely that
truck driver's fatal injuries resulted from roll-over,
as opposed to collision with tractor-trailer, was not
admissible; witness had no formal medical training
and was not qualified as expert on cause of death by
knowledge,  skill,  training,  or  education,  and
although he had extensive experience as accident
reconstructionist, he did not demonstrate adequate
experience in determining cause of death, and
autopsy report on which witness based his
conclusion was insufficient factual basis for the
conclusion. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☞2545**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2542 Evidence
                    170Ak2545 k. Admissibility. Most
Cited Cases
A trial court is entitled to make a decision on the
admissibility of expert testimony without a hearing,
on a summary-judgment motion, if the parties have
had an adequate opportunity to present evidence
and argument on the issue and the record reflects
that the material facts related to the admissibility
issue are not in dispute. Fed.Rules Evid.Rule 702,
28 U.S.C.A.

**[3] Death 117 ☞17**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                    Page 2

--- F.Supp.2d ----, 2006 WL 2883271 (M.D.Ala.), 71 Fed. R. Evid. Serv. 498
(Cite as: --- F.Supp.2d ----)

117 Death
    117III Actions for Causing Death
        117III(A) Right of Action and Defenses
            117k12 Grounds of Action
                117k17 k. Proximate Cause of Death.
Most Cited Cases
Tractor-trailer driver whose vehicle collided with another truck that had rolled over on the highway was not liable in wrongful death and negligence action brought under Alabama law by estate of driver of truck that had rolled over, absent showing that the collision, rather than the roll-over, was the proximate cause of the fatal injuries.

Edward A. Robinson, III, Baton Rouge, LA, Henry Lee Penick, H.L. Penick & Associates PC, Birmingham, AL, for Plaintiff.
Richard E. Broughton, William Evans Brittain, Ball Ball Matthews & Novak PA, Montgomery, AL, for Defendants.

**OPINION**
MYRON H. THOMPSON, District Judge.
*1 In this lawsuit, which arises out of a collision between two tractor-trailer trucks on an Alabama interstate highway, plaintiff Lori Ann Morris, as administratrix of the estate of the deceased Vernell Brian Morris, charges defendants Edward Neal Thompson and Florida Transformer, Inc. with the following state-law claims: wrongful death; negligence; negligent hiring, training, supervision, and retention; negligent entrustment; and negligent and wanton violation of state regulations. The plaintiff also attempts to assert a federal claim that the defendants negligently and wantonly violated Federal Motor Carrier Safety Regulations.[FN*] The plaintiff invokes the court's jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship) and 1367 (supplemental).

This case is currently before the court on the defendants' motion for summary judgment. The motion will be granted.

**I. SUMMARY-JUDGEMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115-17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, at the summary-judgment stage, the court assumes that the facts are as the plaintiff alleges and makes all reasonable inferences in favor of her as the nonmoving party.

**II. FACTS**

At approximately 3:25 on the morning of September 4, 2004, while traveling north on I-85 in Macon County, Alabama, the decedent's tractor-trailer truck swerved into the median, struck a road sign and drainage ditch, came back up the embankment onto the north-bound lane of I-85, and rolled over onto the driver's side. When the truck came to rest, part of the tractor was on I-85 and part of the trailer had come to rest off the highway, on the median.

Thompson was traveling north on I-85 when he noticed the decedent's truck blocking the road. He slammed on his brakes, but his tractor-trailer nonetheless collided with the decedent's disabled tractor-trailer in the left lane of the two lanes. At the time he saw the decedent's truck, Thompson was driving within the 70-mile-per-hour speed limit, his headlights were on, and the road was dry. Thompson was an employee of Florida

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                      Page 3

--- F.Supp.2d ----, 2006 WL 2883271 (M.D.Ala.), 71 Fed. R. Evid. Serv. 498
**(Cite as: --- F.Supp.2d ----)**

Transformer, Inc. and had a co-employee in his truck at the time of the accident.

### III. DISCUSSION

**\*2** With this lawsuit, as stated, the plaintiff attempts to assert a number of state and federal claims, based on wrongful death, negligence, wantonness, and violation of various regulations. Critical to all these claims is whether Thompson was the proximate cause of the decedent's death; absent this proximate cause all the claims must fail.

[1] The only evidence the plaintiff submits to support that Thompson's collision with the decedent's truck, and not the roll-over accident, was the proximate cause of the decedent's death is the testimony of her accident-reconstruction expert, Edward L. Robinson, Ph.D. Robinson states that, with his "general experience with overturned trucks, " he has never seen injuries as severe as the decedent's in an overturned truck accident; that it is, therefore, highly unlikely that the decedent's injuries were associated with the overturn; and that, instead, the impact with Thompson's vehicle at 60 or 70 m.p.h. "would be expected to cause some very similar injuries." Robinson Depo. p. 19. The defendants object to Robinson's testimony as inadmissible under Fed.R.Evid. 702.

The Federal Rules of Evidence govern the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under the federal rules, the trial judge serves a gatekeeping function, making both a "relevance" and a "reliability" determination, that is, disallowing expert testimony when it will not be helpful to the trier of fact or when it lacks a reliable foundation. *Id.* at 589, 113 S.Ct. 2786. A trial judge performs this gatekeeping function by applying the Federal Rules of Evidence, particularly Rule 702. Rule 702, as amended effective December 1, 2000, provides:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

The burden is traditionally placed on the proponent of expert testimony to establish that such admissibility requirements have been met by a " preponderance of the evidence." *Allison v. McGhan Medical Corporation,* 184 F.3d 1300, 1312 (11th Cir.1999) ("the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable"); Fed.R.Evid. 702, advisory committee notes, 2000 amendment.

In *Daubert,* the Supreme Court set forth a list of factors that may guide the trial judge's Rule 702 decision as to whether expert testimony might reliably assist the factfinder, including: whether a theory or technique can be or has been tested; whether a theory or technique has been subjected to peer review or publication; whether a theory or technique has gained widespread acceptance within a relevant community of experts, or, rather, has been unable to garner more than minimal support; and the known or potential rate of error of a technique, and the existence and maintenance of standards controlling the technique's operation. 509 U.S. at 593-594, 113 S.Ct. 2786.

**\*3** These *Daubert* factors are not, the Supreme Court has emphasized, appropriately used as a " definitive checklist" but should instead be understood as non-exclusive, nondispositive considerations that may shape the trial judge's " flexible inquiry" under Rule 702. *Id.* at 594, 113 S.Ct. 2786. Moreover, the trial court's Rule 702 gatekeeping responsibilities obtain equally for all expert testimony, not just scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The *Daubert*-type analysis should not be used to disfavor expert testimony grounded in experience or engineering practice rather than in pure scientific theory. *Id.* at 150, 119 S.Ct. 1167. However, "if the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                        Page 4

--- F.Supp.2d ----, 2006 WL 2883271 (M.D.Ala.), 71 Fed. R. Evid. Serv. 498
**(Cite as: --- F.Supp.2d ----)**

witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply taking the expert's word for it." Fed.R.Evid. 702, advisory committee notes, 2000 amendment (internal citations and quotations omitted).

"While the inquiry into 'reliable principles and methods' has been a familiar feature of admissibility analysis under *Daubert,* Rule 702 appears to require a trial judge to make an evaluation that delves more into the facts than was recommended in *Daubert,* including as the rule does an inquiry into the sufficiency of the testimony's basis ('the testimony is based upon sufficient facts or data') and an inquiry into the application of a methodology to the facts ('the witness has applied the principles and methods reliably to the facts of the case')." *Rudd v. General Motors Corp.,* 127 F.Supp.2d 1330, 1336 (M.D.Ala.2001) (Thompson, J.). "Neither of these two latter questions that are now mandatory under the rule-the inquiries into the sufficiency of the testimony's basis and the reliability of the methodology's application-were expressly part of the formal admissibility analysis under *Daubert.*" *Id.*

Despite this express provision for judicial evaluation of such factually entwined matters, however, the advisory committee notes caution that the trial judge must still avoid usurping the role of the trier of fact:
"[The revised rule] is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.... [T]he rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a seachange over federal evidence law, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

Fed.R.Evid. 702, advisory committee notes, 2000 amendment (internal citations and quotations omitted).

**\*4** [2] The court also appreciates that it is engaging in its Rule 702 analysis on a summary-judgment motion. As a result, two additional points must be made. First, while the court is making its admissibility decision on the basis of the record already before it and without a hearing, the parties have had an adequate opportunity to submit arguments and evidence. A trial court is entitled to make a decision on the admissibility of expert testimony without a hearing, on a summary-judgment motion, if the parties have had an adequate opportunity to present evidence and argument on the issue and the record reflects, as it does here, that the material facts related to the admissibility issue are not in dispute. *Rudd,* 127 F.Supp.2d at 1334 n. 3 ("For purposes of the present summary-judgment motion ..., this court will make the [Rule 702] admissibility decisions ... on the basis of the record already before it.") (citations omitted). Indeed, it is evident from the parties' submissions that they expected the court to make its Rule 702 decision without an evidentiary hearing on the current record.

Second, the Rule 702 " sufficiency-of-basis inquiry is formally quite distinct from the [Fed.R.Civ.P. 56] sufficiency-of-evidence inquiry involved in summary-judgment analysis, that is, Rule 702 mandates a determination of whether the expert had sufficient evidence (evidence which itself may or may not be admissible) to support his or her testimony, not a determination of whether that testimony standing alone provides sufficient evidence to allow a reasonable fact-finder to find for the plaintiff on an issue of substantive law." *Rudd,* 127 F.Supp.2d at 1336-1337 n. 5. Although these two inquiries may often turn out to resemble each other, they must be kept separate if the court is to remain faithful to Rule 702's and Rule 56's separate purposes.

Applying these principles and in performance of its gatekeeping function, this court concludes that Robinson's expert testimony is inadmissible, for it fails to meet any of Rule 702's requirements. First,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                    Page 5

--- F.Supp.2d ----, 2006 WL 2883271 (M.D.Ala.), 71 Fed. R. Evid. Serv. 498
**(Cite as: --- F.Supp.2d ----)**

Robinson has not been qualified as an expert on cause of death by "knowledge, skill, ... training, or education." Fed.R.Evid. 702. Robinson admitted in his deposition that he is not a medical doctor; he has no formal medical training; he is not a cause-of-death expert; he has no training, and is not an expert, in biomechanics; he does not hold himself out as an expert on what specific injuries cause death; and, here, he has no opinion to a reasonable degree of medical/biomechanical engineering certainty as to what caused the decedent's death. Robinson Depo. p. 17-20; 85-88.

Instead, Robinson attempts to rely on his experience to conclude that Thompson's collision with the decedent's truck caused the decedent's death. However, his experience is also inadequate to qualify him under Rule 702. Although he seems to have extensive experience as an accident reconstructionist, he has not demonstrated adequate experience in determining cause of death. There is no evidence of the nature and types of accidents Robinson has investigated in the past and, specifically, of what he learned, through his experience, about the various and differing causes of death in accidents similar to one in which the decedent died. In fact, as already stated and as indicated in his deposition, Robinson does not even consider himself to be an expert in determining cause of death:

**\*5** "Q: You don't hold yourself out as an expert in this case being able to determine cause of death?"
"A: Oh, no. No."

Robinson Depo. p. 17. *See Montgomery v. Noga,* 168 F.3d 1282 (11th Cir.1999) (excluding an expert's opinion because the issues to which the expert testified were distinct from his area of expertise); *Kyser v. Harrison,* 908 So.2d 914, 919-920 (Ala.2005) ("an expert may not testify to his opinion on matters outside of his field of training and experience").

Second, Robinson's "testimony is [not] based upon sufficient facts or data." Fed.R.Evid. 702. His conclusion, as indicated in his deposition, is simply based on the facts that he gleaned from his review of the decedent's injuries in the autopsy report:
"Q: But you don't know what injuries caused his

death?"
"A: I haven't-all I've done is look at the autopsy report. I haven't tried to make any determination beyond that."

Robinson Depo. p. 86. The evidence does not show how the autopsy report, standing alone, is sufficient to allow Robinson to opine what caused the decedent's fatal injuries-that is, whether it was the initial rollover of the decedent's truck or Thompson's collision with the decedent's disabled truck sprawled across the roadway. To conclude from the autopsy report that the decedent's death was caused by the collision between the decedent's and Thompson's trucks, rather than the earlier rollover of the decedent's truck, would be a leap based on faith rather than any evidence.

Third, there is no evidence that Robinson used " reliable principles and methods" to reach his conclusion on cause of death. Fed.R.Evid. 702. Robinson analyzed the force of the Thompson collision on the decedent's truck to conclude that such a tremendous force was greater than what his seatbelt was designed to withstand. Robinson also opines that, based on his experiences with roll-over accidents, he has never seen injuries as severe as those sustained by the decedent. Therefore, according to Robinson, the second collision is likely to have caused the injuries indicated in the decedent's autopsy report. This methodology might have been sufficient if there was only one accident. However, when looking at cause of death in a multiple-accident scenario, it makes sense to look at each accident separately in order to determine which event caused the fatal injury. Robinson's methodology is inadequate to determine, with sufficient certainty, that the decedent should have survived the rollover and thus must have died from the collision. In deed, Robinson admits that people have been fatally injured in roll-over accidents.

Moreover, instead of clarifying this significant issue, the plaintiff merely suggests that Robinson's testimony creates a factual issue for the jury to decide. But the plaintiff confuses the different purposes, explained earlier, of Rule 702 and Rule 56. Robinson's testimony could create a Rule 56 factual issue only if it has first passed Rule 702's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                              Page 6

--- F.Supp.2d ----, 2006 WL 2883271 (M.D.Ala.), 71 Fed. R. Evid. Serv. 498
**(Cite as: --- F.Supp.2d ----)**

reliability requirement.

**\*6** Finally, the plaintiff having failed to meet Rule 702's first requirements (that Robinson is "qualified as an expert by knowledge, skill, experience, training, or education" and that his "testimony is based upon sufficient facts or data" and "is the product of reliable principles and methods"), it follows perforce that she cannot meet Rule 702's last requirement that it be shown that Robinson " applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

Accordingly, Robinson's expert testimony on the decedent's cause of death is inadmissible under Rule 702 and will not be considered by the court. In short, the plaintiff has not, among other things, explained "how [Robinson's] experience leads to the conclusion reached, why that experience is a sufficient basis for [his] opinion, and how [his] experience is reliably applied to the facts." Fed.R.Evid. 702, advisory committee notes, 2000 amendment (internal citations and quotations omitted). "The trial court's gatekeeping function requires more than simply taking the expert's word for it." *Id.*

[3] The court's Rule 702 conclusion to exclude the plaintiff's expert testimony on causation leaves the separate Fed.R.Civ.P. 56 question of whether the remaining evidence is sufficient to create a triable issue of fact. Because the defendants have met their burden of showing there is no admissible evidence to show that Thompson caused the decedent's death, the defendants are entitled to summary judgment of the causation issue, and thus on all claims. *Fitzpatrick,* 2 F.3d at 1115-16 ("For issues ... on which the non-movant would bear the burden of proof at trial, ... the moving party [for summary judgment] simply may show[ ]-that is, point[ ] out to the district court-that there is an absence of evidence to support the non-moving party's case.") (citations and quotation marks omitted).

An appropriate summary judgment in favor of the defendants will be entered.

**JUDGMENT**

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) The motions for summary judgment filed by defendants Florida Transformer, Inc. and Edward Neal Thompson (Doc. Nos. 23 & 50) are granted.

(2) Judgment is entered in favor of defendants Florida Transformer, Inc. and Thompson and against plaintiff Lori Ann Morris, as administratrix of the estate of Vernell Brian Morris, with plaintiff Morris taking nothing by her complaint.

It is further ORDERED that costs are taxed against plaintiff Morris, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

> FN\* The plaintiff alleges that the defendants violated the Federal Motor Carrier Safety Regulations developed under the Federal Motor Carrier Safety Improvement Act of 1999, 49 U.S.C. § 101 et seq., as prescribed by the U.S. Department of Transportation, 49 C.F.R. Part 107, Parts 171-180, Parts 382-384, and Parts 390-399. Although Plaintiff does not cite to a statute that grants her a private cause of action under the statute, 49 U.S.C. § 14704(a)(2) is the only provision on which the courts have relied. Section 14704(a)(2) provides that, "a carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part."
> One court has found that § 14704(a)(2) creates a private cause of action for personal injuries, *Marrier v. New Penn Motor Express, Inc.,* 140 F.Supp.2d 326 (D.Vt.2001) (Sessions, J.), while others have held that it only creates a cause of action for commercial disputes. *Stewart v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2883271 (M.D.Ala.), 71 Fed. R. Evid. Serv. 498
**(Cite as: --- F.Supp.2d ----)**

> *Mitchell Transp.,* 241 F.Supp.2d 1216, 1220 (D.Kan.2002) (VanBebber, J.) (" Section 14704(a)(2) creates a private right of action for damages in commercial disputes involving violations of the Motor Carrier Act and its regulations, but not for personal injury actions such as the one in this case."); *Schramm v. Foster,* 341 F.Supp.2d 536, 547-548 (D.Md.2004) (Motz, J.) ("[Section 14704(a)(2) ] was intended to apply only to commercial damages, not personal injuries."); *Crosby v. Landstar,* 2005 WL 1459484 (D.Del. June 21, 2005) (Robinson, C.J.) ("Section 14704 does not give this court jurisdiction over negligence claims.").
> This court need not reach this issue.

M.D.Ala.,2006.
Morris v. Florida Transformer, Inc.
--- F.Supp.2d ----, 2006 WL 2883271 (M.D.Ala.), 71 Fed. R. Evid. Serv. 498

Briefs and Other Related Documents (Back to top)

• 3:05cv00962 (Docket) (Oct. 6, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Attachment B

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1

Not Reported in F.Supp.2d, 2005 WL 1459484 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Crosby v. LandstarD.Del.,2005.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Richard CROSBY, Plaintiff,
v.
LANDSTAR, et al., Defendants.
**No. Civ. 04-1535-SLR.**

June 21, 2005.

Richard Crosby, New Castle, Delaware, Plaintiff, pro se.
James E. Drnec, of Morris, James, Hitchens & Williams, Wilmington, Delaware, for Defendants.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

**\*1** Plaintiff, a pro se litigant, filed his complaint on December 20, 2004, alleging "theft by deception and damages related to [an accident occurring on December 20, 2002,] including medical and legal cost in the [amount] of $40,042,000." (D.I.1) In addition, plaintiff has alleged that defendants have not paid him for "work completed and [have] failed to pay insurance claims." (D.I.6) Plaintiff amended his complaint on December 28, 2004, indicating that his claims were brought pursuant to 18 U.S.C. § 660, 15 U.S.C. § 3901 and 49 U.S.C. § 14704. Defendants filed a motion to dismiss plaintiff's claims, which was granted in part and denied in part on April 8, 2005. [FN1] (D.I.7) The court also requested that plaintiff supplement the record in order to more specifically state his allegations.

> FN1. The motion was granted as to plaintiff's claims under 18 U.S.C. § 660, 15 U.S.C. § 3901, but denied as to

plaintiff's claims under 49 U.S.C. § 14704. (D.I.7)

Now pending before the court is defendants' motion to dismiss for failure to state a claim and plaintiff's motion to schedule a trial date or pretrial hearing. (D.I.8, 9)

II. BACKGROUND

Plaintiff is a Delaware resident and defendant Landstar is a Delaware corporation. (D.I.1) Plaintiff owns his own semi-truck. (D.I. 12 at ¶ 1) On July 1, 2001, plaintiff and defendants entered into a Motor Vehicle and Haulage Agreement ("the Agreement"), under which plaintiff agreed to haul loads for defendants as an independent contractor. (D.I.10, Ex. B) Under the Agreement, defendants provided plaintiff with a trailer for carrying the load. (*Id.;* D.I. 12) On December 20, 2002, while transporting defendants' load, the trailer "failed" when "the tie down 'D-rings' shattered under stress releasing the load to fly forward causing plaintiff harm and destroying [his] semi-truck." [FN2] (D.I. 12 at ¶ 1) In addition to the damage to his semi-truck, plaintiff suffered physical injuries in the accident and alleges that defendants have failed to meet their payment obligations under the Agreement. (D.I. 12 at ¶¶ 3, 4)

> FN2. Because this is a motion to dismiss, the court considers the facts as alleged by plaintiff.

III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1459484 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir.1997); *Urrutia v. Harrisburg County Police Dep't.,* 91 F.3d 451, 456 (3d Cir.1996). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

### IV. DISCUSSION

#### A. 49 U.S.C. § 14704

**\*2** In this case, plaintiff has asserted his claims under 49 U.S.C. § 14704. The statute, titled "Rights and remedies of persons injured by carriers or brokers," states:

(a) ... (1) A person injured because a carrier or broker providing transportation or service subject to jurisdiction under [49 U.S.C. §§ 13101 et seq.] does not obey an order of the Secretary or the Board as applicable ... may bring a civil action to enforce that order under this subsection.... (2) ... A carrier or broker providing transportation or service subject to [49 U.S.C. §§ 13101 et seq.] is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of [49 U.S.C. §§ 13101 et seq.].

49 U.S.C. § 14704.

Section 14704 was enacted by Congress as part of the ICC Termination Act of 1995 ("ICC Act"). With the enactment of the ICC Act, Congress disposed of the Interstate Commerce Commission and transferred its responsibilities to the Department of Transportation ("DOT"). *See*

*Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.,* 192 F.3d 778, 780 (8th Cir.1999). Congress, however, did not transfer all of the responsibilities of the ICC to DOT. A section of the ICC Act allows commercial disputes, which had been administratively adjudicated by the ICC, to be brought in federal court. H.R.Rep. No. 104-311, at 87-88 (1995), *reprinted in* 1995-2 U.S.C.C.A.N. 793, 799-800. Specifically, the ICC Act was intended to "permit ... private, commercial disputes to be resolved the way that all other commercial disputes are resolved-by the parties." Section 14704 , in particular, was intended to "provide for private enforcement of the provisions of the Motor Carrier Act in court." H.R.Rep. No. 104-311, at 87-88 (1995), *reprinted in* 1995-2 U.S.C.C.A.N. 793, 799-800; *Owner-Operator Indep. Drivers Ass'n,* 192 F.3d at 785.

In this case, the court concludes that plaintiff does not allege a claim that can be remedied under § 14704. Plaintiff does not allege any violations of the Motor Carrier Act, nor does he assert facts that would support such an allegation. Plaintiff's claims for personal injury and property damage are more like negligence claims. Section 14704 does not give this court jurisdiction over negligence claims, which are traditionally within the purview of state jurisdiction. *See Schramm v. Foster,* 341 F.Supp.2d 536, 547 (D.Md.2004); *Stewart v. Mitchell Transp.,* 241 F.Supp.2d 1216, 1220 (D.Kan.2002). Therefore, defendants' motion to dismiss is granted as to plaintiff's negligence claims and his claims under § 14704.

#### B. Breach Of Contract

Plaintiff contends that he has not been paid for work performed under the Agreement, nor has defendant made insurance payments to him. The Agreement between plaintiff and defendants provides that the Agreement "is to be governed by the laws of the State of Illinois." Furthermore, "[a]ny dispute arising out of or relating to this Agreement, including any allegation of breach thereof, shall be fully and finally resolved by arbitration in accordance with Illinois' arbitration action...." (D.I. 10, Ex. B at ¶ 25) [FN3] Breach of contract is also a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1459484 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

state law claim, in this case an Illinois state law claim. As such, [FN4] this court does not have jurisdiction over plaintiff's breach of contract claims and defendants' motion to dismiss is granted with respect to plaintiff's breach of contract claims.

> FN3. Plaintiff alleges that exhibit B "is a fraud and illegible" that "page one and two are clearly not the same document ... also pages do not match fax dates at top and are clearly not of the same document." Plaintiff, however, alleges he was carrying a load for defendants using his own semi-truck. At some point, the parties entered into an agreement upon which plaintiff was to provide services and defendants were to pay for such services. Plaintiff has failed to provide the court with an alternate agreement, and plaintiff's signature is on the agreement provided by defendants. Therefore, the court concludes that the agreement provided by defendants is the controlling agreement in this case.

> FN4. Because both plaintiff and defendants are citizens of the State of Delaware, the court cannot exert jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332, which requires diversity of citizenship.

### V. CONCLUSION

**\*3** For the reasons stated, defendants' motion to dismiss is granted. (D.I.9) The court finds plaintiff's motion to set a trial date or pretrial hearing is moot. (D.I.8) An order consistent with this memorandum opinion shall issue.

### ORDER

At Wilmington this 21st day of June, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendants' motion to dismiss (D.I.9) is granted.

2. Plaintiff's motion for a trial date, or pretrial hearing (D.I.8) is moot.

D.Del.,2005.
Crosby v. Landstar
Not Reported in F.Supp.2d, 2005 WL 1459484 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:04CV01535 (Docket) (Dec. 20, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.